Filed 5/22/13  P. v. Vizcarra CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D061878 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. JCF25950) |
| JUAN JOSE VIZCARRA, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Imperial County, Christopher J. Plourd, Judge.  Reversed in part with directions; affirmed in part as modified.

Buckley & Buckley and Christian C. Buckley, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Steve Oetting and Michael Pulos, Deputy Attorneys General, for Plaintiff and Respondent.

In this gang-related stabbing case, a jury convicted Juan Jose Vizcarra—who was a member of the Chicali Brazas (Chicali) criminal street gang in Brawley, California—of

(1) assaulting Jesus Zermeno with a deadly weapon, a knife (count 2: Pen. Code, § 245, subd. (a)(1)) (undesignated statutory references will be to the Penal Code); and (2) attempting to dissuade a witness, Zermeno, in violation of section 136.1, subdivision (a)(2) (hereafter section 136.1(a)(2)) (count 3). The jury found Vizcarra not guilty of attempting to willfully, deliberately, and with premeditation murder Zermeno (§§ 187, subd. (a), 664) as charged in count 1.

The jury found true a count 2 allegation that Vizcarra committed assault with a deadly weapon for the benefit of, at the direction of, or in association with a criminal street gang (§ 186.22, subd. (b)(1)). In a bifurcated proceeding, the court found true a count 2 allegation that Vizcarra had suffered a strike prior (§ 667, subds. (b)-(i)). A strike prior allegation was not included in count 3 of the information.

The court sentenced Vizcarra in this case (No. JCF25950) to an aggregate prison term of 15 years consisting of (1) the upper term of four years for his count 2 conviction of assault with a deadly weapon, doubled to eight years under the Three Strikes law as a result of the court's true finding on the count 2 strike prior allegation; plus (2) a consecutive middle term of two years for his conviction of attempting to dissuade a victim or witness; and (3) a five-year term for the gang enhancement.[1] During the same hearing, the court also sentenced Vizcarra to concurrent terms in two other cases: one—

---

[1]    As discussed, *post*, Vizcarra claims, and the Attorney General agrees, the abstract of judgment contains two errors. First, it erroneously indicates that Vizcarra's count 2 conviction was a conviction for attempted murder, rather than for assault with a deadly weapon. Second, the abstract does not show the gang enhancement allegation was found true only with respect to count 2.

case No. JCF25997 (hereafter the jail stabbing case)—involving an assault with a deadly weapon that he committed while in custody for the present case, and another—case No. JCF23935 (hereafter the probation revocation case)—involving revocation of probation granted to him following his prior robbery conviction.

Vizcarra appeals, contending (1) there is insufficient evidence to sustain his count 3 conviction of attempting to dissuade a victim or witness (§ 136.1(a)(2)) because, although the evidence may show he attempted to influence the content of Zermeno's testimony, there is no evidence he attempted to prevent or dissuade Zermeno from going to court, and, thus, there is no evidence he attempted to prevent Zermeno from testifying; (2) the abstract of judgment must be corrected (a) to reflect that he was convicted of assault with a deadly weapon (count 2) and not attempted murder (count 1), and (b) to clarify that the gang enhancement allegation was found true only with respect to count 2; and (3) the court erred in both the instant case and the jail stabbing case by calculating his custody credits with the 15 percent limitation under section 2933.1, rather than under section 4019, and, thus, he should have been awarded 280 days of work time credit in each case.

The Attorney General argues the evidence is sufficient to sustain Vizcarra's count 3 conviction of attempting to dissuade a victim or witness, but agrees the abstract of judgment contains two errors that should be corrected in the manner Vizcarra requests. The Attorney General also agrees the custody credits in both this case and the jail stabbing case should have been calculated under section 4019, and, thus, the judgment in this case should be modified as Vizcarra requests. However, the Attorney General asserts

3

this court should deny Vizcarra's request to modify the custody credit determination in the unrelated jail stabbing case because (among other things) he has not filed a notice of appeal in that case. In addition, the Attorney General claims Vizcarra should have been sentenced to 22 years, not 15 years, in prison.

We conclude the evidence is sufficient to sustain Vizcarra's count 3 conviction of attempting to dissuade a victim or witness. We also conclude the abstract of judgment must be corrected (1) to reflect that he was convicted in this case of assault with a deadly weapon, not attempted murder; and (2) to clarify that the gang enhancement allegation was found true only with respect to count 2. Furthermore, we modify Vizcarra's sentence in this case to award him a total of 840 days of presentence custody credit, consisting of 560 actual days of credit plus 280 days of conduct credit.

In addition, we conclude the court erred and rendered an unauthorized sentence by failing to double under the Three Strikes law the two-year sentence it imposed for Vizcarra's count 3 conviction. Accordingly, we reverse the sentence as to count 3 and remand this case for resentencing subject to the court's exercise of its section 1385, subdivision (a) power to strike the prior conviction finding.

Finally, we conclude the court erred and rendered an unauthorized sentence by failing to impose a five-year enhancement under section 667, subdivision (a)(1) (hereafter section 667(a)(1)). Accordingly, we modify the judgment to impose a five-year consecutive term for the serious felony prior conviction under section 667(a)(1). In all other respects, we affirm the judgment.

4

FACTUAL BACKGROUND[2]

Vizcarra, whose Chicali gang moniker was "Shorty," stabbed Zermeno─who was affiliated with a rival street gang─twice in the ribs with a knife, causing him to suffer a collapsed lung.  Zermeno was hospitalized for about two weeks.  At the time of the assault, Vizcarra was accompanied by Jeffrey Ruiz, whose Chicali gang moniker was "Speedy" and who testified at trial that he saw Vizcarra stab Zermeno.

While in custody, Vizcarra made three phone calls─one to his fellow Chicali gang member Fernando Flores and the others to Chicali gang associates Carlos Angulo and Walter Lopez─that are pertinent to this appeal.  Specifically, in the first phone call, Vizcarra called Angulo.  Vizcarra told Angulo:  "Ask for [Zermeno], man.  Find him, man.  Do that favor for me, man, and tell him that when he goes to court to say, 'No.' You know what I mean?"  Angulo replied, "Yes."  After briefly discussing something else, Vizcarra told Angulo:  "Hey, but—try to find that damn Jesus Zermeno, man.  All right?"  Angulo responded, "All right, then."

In the second phone call, Vizcarra called Lopez and asked him for a "favor." Vizcarra asked Lopez whether he knew Zermeno, and Lopez indicated he did not. Vizcarra explained, "Uh, well the fucker is saying . . . Supposedly, that he is snitching, man."  Lopez said, "Really?"  Lopez then told Vizcarra, "Wait, hold on, I'm going to write that shit down, man."  Vizcarra spelled Zermeno's name for Lopez, who then said

---

2     As Vicarra's contentions on appeal are narrow in scope, and his count 3 insufficiency-of-the-evidence claim rests on an erroneous legal premise (discussed, *post*), our summary of the factual background is very brief.

he would "see what's up." After informing Lopez that he (Vizcarra) was being charged with attempted murder, Vizcarra told Lopez: "That's why I want you to [stutters] do that favor for me, man." Lopez responded affirmatively. Vizcarra then said, "Find that fucker, man," adding, "We got court on Monday, fool." Lopez replied, "All right, fool." Vizcarra then gave instructions to Lopez about what Zermeno should say in court:

> "And then, well, if you can get a hold of him before Monday it would be great, man. And just tell him that if he is going to go to court, man, to just say that it wasn't us. You know what I mean? That he should say, 'No—.'"

Interrupting Vizcarra, Lopez replied, "Yeah." Vizcarra added that Zermeno should say, "[I]t's the wrong people.'" Lopez indicated he would do this favor for Vizcarra.

In the third phone call, Vizcarra called Flores, whom he called "Flako." Vizcarra asked Flores whether he knew Zermeno, and Flores replied he did not. Vizcarra told Flores, "[I]f [Zermeno] goes to court he should say, 'No.' You know what I mean, man?" Flores replied, "Yes." Vizcarra added, "That it wasn't us, dog." Flores responded, "Yeah, I know. I know." Vizcarra further explained that he "already told [Lopez]" and that Lopez had written down Zermeno's name. Flores confirmed Zermeno's name and told Vizcarra he had written down Zermeno's name. Vizcarra then told Flores: "All right, dog. Just figure that shit out, dog. All right? . . . Do that favor for me, man." Flores reassured Vizcarra, saying, "Yeah, don't trip." (1CT 226)!

Zermeno, the victim in this case, testified for the prosecution that, on the night in question, two Hispanic men speaking in Spanish and brandishing knives ran towards him

6

and one stabbed him twice in the ribs. At trial, Zermeno indicated that he did not know the identity of the men, and he could not identify Vizcarra as the person who stabbed him.

DISCUSSION

I. *SUFFICIENCY OF THE EVIDENCE* (*COUNT 3: § 136.1(A)(2)*)

Vizcarra first contends there is insufficient evidence to sustain his count 3 conviction of attempting to dissuade a victim or witness (§ 136.1(a)(2)) because, although the evidence may show he attempted to influence the content of Zermeno's testimony, there is no evidence he attempted to prevent or dissuade Zermeno from going to court; and, thus, there is no evidence he attempted to prevent Zermeno from testifying. Vizcarra's count 3 insufficiency-of-the-evidence claim rests on his contention that section 136.1(a)(2) "is limited solely to those instances where a defendant attempts to prevent or dissuade a witness [or victim] from giving any testimony." Vizcarra's contentions are unavailing.

A. *Applicable Legal Principles*

1. *Statutory Construction*

Our decision requires us to resolve an issue of statutory construction governed by well-established principles. The California Supreme Court has explained that "[t]he objective of statutory construction is to determine the intent of the enacting body so that the law may receive the interpretation that best effectuates that intent. [Citation.] 'We first examine the words themselves because the statutory language is generally the most reliable indicator of legislative intent. [Citation.] The words of the statute should be

7

given their ordinary and usual meaning and should be construed in their statutory context.' [Citation.] If the plain, commonsense meaning of a statute's words is unambiguous, the plain meaning controls." (*Fitch v. Select Products Co.* (2005) 36 Cal.4th 812, 818.)

"The interpretation of a statute presents a question of law subject to de novo review on appeal." (*People v. Wills* (2008) 160 Cal.App.4th 728, 736; *Goodman v. Lozano* (2010) 47 Cal.4th 1327, 1332.)

2. *Substantial evidence standard of review*

In assessing Vizcarra's challenge to the sufficiency of the evidence, we also apply the substantial evidence standard of review. (See *People v. Perez* (1992) 2 Cal.4th 1117, 1124.) Under that standard of review, we view the evidence "in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence that is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*People v. Johnson* (1980) 26 Cal.3d 557, 578; see also *Jackson v. Virginia* (1979) 443 U.S. 307, 319.)

The Court of Appeal recently explained that, "when a criminal defendant claims insufficiency of the evidence on a particular element of the crime of which he was convicted, we presume the evidence of that element was sufficient, and the defendant bears the burden of convincing us otherwise. To do so, the defendant . . . must set forth in his opening brief all of the material evidence on the disputed element in the light most favorable to the prosecution, and then must persuade us that that evidence cannot

8

reasonably support the jury's verdict." (*People v. Battle* (2011) 198 Cal.App.4th 50, 62; see also *People v. Sanghera* (2006) 139 Cal.App.4th 1567, 1574.)

The uncorroborated testimony of a single witness is sufficient to sustain a conviction or true finding on an enhancement allegation, "unless the testimony is physically impossible or inherently improbable." (*People v. Scott* (1978) 21 Cal.3d 284, 296.) We do not reweigh the evidence, resolve conflicts in the evidence, or reevaluate the credibility of witnesses. (*People v. Ochoa* (1993) 6 Cal.4th 1199, 1206; *People v. Jones* (1990) 51 Cal.3d 294, 314.)

B. *Analysis*

We are asked to construe the meaning of section 136.1(a)(2), which, as pertinent here, provides that "any person" is guilty of a public offense when he or she "[k]nowingly and maliciously attempts to prevent or dissuade any witness or victim from *attending or giving testimony at any trial . . . .*"[3] (Italics added.) Giving to the foregoing italicized words their ordinary and usual meaning, we conclude that section 136.1(a)(2) plainly and unambiguously prohibits any person from knowingly and maliciously attempting to prevent or dissuade a witness or victim from either (1) attending—that is, going to and being present at—a trial; or (2) giving *some* testimony in the event the witness or victim

---

3    Section 136.1(a)(2) provides in full: "(a) Except as provided in subdivision (c), any person who does any of the following is guilty of a public offense and shall be punished by imprisonment in a county jail for not more than one year or in the state prison:  [¶] . . . [¶] (2) Knowingly and maliciously attempts to prevent or dissuade any witness or victim from *attending or giving testimony at any trial*, proceeding, or inquiry authorized by law." (Italics added.)

9

attends and testifies at the trial. As used in section 136.1(a)(2), the word "testimony" is unqualified, indicating a legislative intent to punish any knowing and malicious attempt to prevent a witness or victim from "giving testimony" in any amount or form "at any trial, proceeding, or inquiry authorized by law." Thus, for example, in a case in which a victim might be called to testify at a trial regarding three separate issues, a knowing and malicious attempt to prevent or dissuade the victim from "giving testimony" on any one of those issues would be a violation of section 136.1(a)(2) under the broad and plain language of that statute. In a prosecution for such a violation, it would be immaterial that the defendant made no attempt to prevent the victim from giving any testimony at all. Had the Legislature intended to more narrowly define the term "giving testimony" to mean "giving any and all testimony," it could easily have done so.

As there is no ambiguity or uncertainty in the broad language of section 136.1(a)(2), and the Legislature is presumed to have meant what it said, the plain and commonsense meaning of the words of the statute controls and we need not resort to legislative history to determine its meaning. (See *People v. Cochran* (2002) 28 Cal.4th 396, 400-401; *Fitch v. Select Products Co.*, *supra*, 36 Cal.4th at p. 818.)

In support of his claim that substantial evidence does not support his conviction under section 136.1(a)(2), Vizcarra relies principally on another statute—section 137[4]—

---

[4]     Section 137, which consists of six subdivisions, provides in full: "(a) Every person who gives or offers, or promises to give, to any witness, person about to be called as a witness, or person about to give material information pertaining to a crime to a law enforcement official, any bribe, upon any understanding or agreement that the testimony of such witness or information given by such person shall be thereby influenced is guilty

10

and *People v. Womack* (1995) 40 Cal.App.4th 926 (*Womack*), *People v. Fernandez* (2003) 106 Cal.App.4th 943 (*Fernandez*), and *People v. Hallock* (1989) 208 Cal.App.3d 595 (*Hallock*); and he asserts that "[u]nder California law . . . there is an important distinction between attempted influencing of content and attempted prevention of testimony. Section 137 [(he maintains)] punishes attempts to influence the nature of the testimony a witness gives while section 136.1[(a)(2)] is limited solely to those instances where a defendant attempts to prevent or dissuade a witness from giving *any* testimony." (Italics added.) Vizcarra also asserts that as "there was no evidence that he was attempting to prevent o[r] dissuade [Zermeno] from giving any testimony," perhaps he

---

of a felony. [¶] (b) Every person who attempts by force or threat of force or by the use of fraud to induce any person to give false testimony or withhold true testimony or to give false material information pertaining to a crime to, or withhold true material information pertaining to a crime from, a law enforcement official is guilty of a felony, punishable by imprisonment pursuant to subdivision (h) of Section 1170 for two, three, or four years. [¶] As used in this subdivision, 'threat of force' means a credible threat of unlawful injury to any person or damage to the property of another which is communicated to a person for the purpose of inducing him to give false testimony or withhold true testimony or to give false material information pertaining to a crime to, or to withhold true material information pertaining to a crime from, a law enforcement official. [¶] (c) Every person who knowingly induces another person to give false testimony or withhold true testimony not privileged by law or to give false material information pertaining to a crime to, or to withhold true material information pertaining to a crime from, a law enforcement official is guilty of a misdemeanor. [¶] (d) At the arraignment, on a showing of cause to believe this section may be violated, the court, on motion of a party, shall admonish the person who there is cause to believe may violate this section and shall announce the penalties and other provisions of this section. [¶] (e) As used in this section 'law enforcement official' includes any district attorney, deputy district attorney, city attorney, deputy city attorney, the Attorney General or any deputy attorney general, or any peace officer included in Chapter 4.5 (commencing with Section 830) of Title 3 of Part 2. [¶] (f) The provisions of subdivision (c) shall not apply to an attorney advising a client or to a person advising a member of his or her family."

11

(Vizcarra) could have been prosecuted under section 137, "but he was not guilty of violating section 136.1[(a)(2)]."

Vizcarra's reliance on *Womack*, *Hallock and Fernandez* is unavailing because (as the Attorney General correctly points out) none of those cases squarely addresses the issue presented here of whether section 136.1(a)(2) is violated by an attempt to prevent or dissuade a witness or victim from giving some, but not any and all, testimony at a trial. *Womack* involved the issue of whether the defendant's conviction of attempted murder was inconsistent with his conviction of a violation of section 137. (*Womack, supra*, 40 Cal.App.4th at pp. 929, 933-934.) To the extent *Womack* suggests in dictum that section 136.1(a)(2) only applies to an attempt to prevent a witness or victim from testifying altogether, we decline to follow that dictum for reasons discussed, *ante*. (See *Womack*, at p. 931 [stating that § 136.1 punishes attempts to "[p]revent[] or dissuad[e] a witness from testifying altogether"].) *Hallock* addressed the issue of whether the defendant was improperly and prejudicially instructed under former section 136.1; it did not address the issue presented here. (See *Hallock, supra*, 208 Cal.App.3d at pp. 605-607.) *Fernandez* involved an appeal from a conviction under section 136.1, subdivision (b)(1),[5] and addressed the issue of "whether an attempt to dissuade a witness from making a

---

5 Section 136.1, subdivision (b)(1), which is not at issue in the instant appeal, provides: "[E]very person who attempts to prevent or dissuade another person who has been the victim of a crime or who is witness to a crime from doing any of the following is guilty of a public offense and shall be punished by imprisonment in a county jail for not more than one year or in the state prison: [¶] (1) Making any report of that victimization to any peace officer or state or local law enforcement officer or probation or parole or correctional officer or prosecuting agency or to any judge."

12

'report . . . to any judge' includes an attempt to influence a victim's testimony at a preliminary hearing." (*Fernandez, supra,* 106 Cal.App.4th at pp. 945, 946-947.)

Vizcarra suggests the interpretation of section 136.1(a)(2) we have adopted—that is, as applicable here, it prohibits any person from knowingly and maliciously attempting to prevent or dissuade a witness or victim from either (1) attending a trial, or (2) giving *some* testimony in the event the witness or victim attends and testifies at the trial—renders section 137 surplusage. !(AOB 13-14)! Vizcarra also suggests he could have been prosecuted under section 137, and thus he was improperly charged under section 136.1(a)(2), stating that "[p]erhaps [he] could have been prosecuted for his remarks under section 137, but he was not guilty of violating section 136.1."[6] !(AOB 16)! The Attorney General rejects Vizcarra's suggestions and asserts section 136.1(a)(2) "was the correct charge."

Vizcarra's suggestions are unavailing. First, he does not identify which of the various subdivisions of section 137 (see fn. 4, *ante*) might have applied under the factual circumstances presented in this case. Subdivision (a) of section 137 punishes "giv[ing] or offer[ing], or promis[ing] to give, to any witness, person about to be called as a witness, or person about to give material information pertaining to a crime to a law enforcement official, any *bribe,* upon any understanding or agreement that the testimony of such witness or information given by such person shall be thereby influenced." (Italics added.)

---

6    Citing *Hallock, supra,* 208 Cal.App.3d at page 607, Vizcarra also asserts he "may not be subject to retrial for the conduct that was the subject of this prosecution on the theory that he violated section 137."

13

This subdivision clearly has no application here, as there is no evidence Zermeno was given, offered, or promised any bribe. Subdivision (b) of that section, a violation of which is a *felony*, punishes (among other things) "attempts *by force or threat of force or by the use of fraud* to induce any person to give false testimony or withhold true testimony." (Italics added.) Subdivision (c), a violation of which is a *misdemeanor*, punishes (among other things) "*knowingly* induc[ing] another person to give false testimony or withhold true testimony not privileged by law." (Italics added.)

We need not decide whether Vizcarra properly could have been charged under subdivisions (b) or (c) of section 137. Assuming for the purpose of analysis that Vizcarra properly could have been charged under one of those subdivisions, we reject his suggestion that our interpretation of section 136.1(a)(2) renders section 137 surplusage. The elements the prosecution must prove to establish a violation of section 136.1(a)(2) are not identical to the elements it must prove to establish a violation of section 137 under either subdivision (b) or subdivision (c). For example, whereas the prosecution must prove under section 136.1(a)(2) that the defendant acted "[k]nowingly and *maliciously*" (italics added), it must prove under subdivision (b) of section 137 that the defendant committed the prohibited attempt "by force or threat of force or by the use of fraud," and under subdivision (c) of that section it must prove the defendant acted "knowingly" but is not required to prove he or she acted maliciously or by force, threat of force, or the use of fraud. Also, the prescribed punishments are different. As noted, violations of sections 136.1(a)(2) and 137, subdivision (b) are punishable as felonies; violations of section 137, subdivision (c), are punishable as misdemeanors. It appears from an analysis of the

14

differing essential elements of the foregoing offenses and the respective prescribed punishments, that the Legislature intended to provide the People with charging alternatives to further the Legislature's intent to impose criminal liability for any attempt to intimidate witnesses or victims who may testify, especially where (as here) such attempted intimidation stems from gang-related activities.

Turning to the evidence in the trial record, we next conclude that substantial evidence in the form of Vizcarra's three recorded jailhouse telephone calls supports his conviction under section 136.1(a)(2) by establishing that—through his intermediary Chicali gang agents Angulo, Lopez, and Flores—he knowingly and maliciously attempted to prevent or dissuade Zermeno from giving trial testimony identifying Vizcarra as the person who stabbed him. Specifically, the evidence shows Vizcarra instructed Angulo during the first telephone call to find "that damn [Zermeno]" and "tell him that when he goes to court to say, 'No.'" The recording of Vizcarra's second call shows he told Lopez that Zermeno was "snitching" and he (Lopez) should "[f]ind that fucker" and "just tell him that if he is going to go to court, man, to just say that it wasn't us. You know what I mean?" The recording of the third call shows Vizcarra told Flores, "[I]f [Zermeno] goes to court he should say, 'No,'" and then added, "That it wasn't us, dog."

That Vizcarra's foregoing instructions to his gang intermediaries constituted a knowing and malicious attempt to intimidate Zermeno and prevent or dissuade him from identifying Vizcarra at trial, is further shown by the testimony of the prosecution's gang expert, Christian Romualdo, a Brawley Police Department detective. Detective

15

Romualdo testified that gang members often attempt to intimidate victims and witnesses in order to dissuade them from testifying and identifying those gang members so that they can "get away with" crimes they have committed. Gang members accomplish such intimidation by "[s]ending messages, threats of violence, profanity [and] threats of death." When asked how they send messages, Detective Romualdo stated, "Oftentimes they'll send a fellow gang member, somebody that they can trust, somebody that they know will . . . complete the threat." He indicated that this has occurred in almost every one of the gang cases he has investigated.

Detective Romualdo, who is fluent in Spanish, indicated that he listened to the recordings of the three telephone calls Vizcarra made from jail to Angulo, Lopez, and Flores. On cross-examination, Detective Romualdo first testified that the purpose of Vizcarra's phone calls was to attempt to prevent Zermeno from coming to court to testify in this matter, but he acknowledged Vizcarra did not expressly ask anyone to do that. Upon further cross-examination, Detective Romualdo opined that Vizcarra was attempting to dissuade Zermeno from identifying Vizcarra in court as the stabber.

Based on the foregoing substantial evidence, we conclude any reasonable jury would find beyond a reasonable doubt that Vizcarra violated section 136.1(a)(2) by knowingly and maliciously attempting to prevent or dissuade Zermeno, the victim in this case, from "giving testimony" at trial within the meaning of that statute.

## II. *ABSTRACT OF JUDGMENT*

Vizcarra next contends the abstract of judgment in this case must be corrected (1) to reflect that he was convicted of assault with a deadly weapon (count 2) and not

16

attempted murder (count 1), and (2) to clarify that the gang enhancement allegation was found true only with respect to count 2.

The Attorney General agrees, as does this court, that the abstract of judgment should be corrected in the manner Vizcarra requests. The abstract correctly indicates that Vizcarra was convicted of count 2, but incorrectly identifies count 2 as "Attempted Murder." The abstract must be corrected to identify count 2 as "Assault with a Deadly Weapon."

Regarding the five-year gang enhancement, the abstract correctly indicates that Vizcarra suffered the imposition of that prison term enhancement under "[Section] 186.22(b)(1)." However, the abstract does not indicate that the gang enhancement allegation was part of count 2, which charged Vizcarra with assaulting Zermeno with a deadly weapon, and not part of count 3, which charged him with attempting to dissuade a victim or witness in violation of section 136.1(a)(2). In support of Vizcarra's claim that the abstract should be amended to clarify that the gang enhancement allegation was found true only with respect to count 2, he asserts that the gang enhancement "has important implications for purposes of determining if a section 136.1 violation is a violent felony" for purposes of section 667.5, subdivision (c)(20), which provides:

> "Enhancement of prison terms for new offenses because of prior prison terms shall be imposed as follows: [¶] . . . [¶] (c) For the purpose of this section, 'violent felony' shall mean any of the following: [¶](20) Threats to victims or witnesses, as defined in Section 136.1, which would constitute a felony violation of Section 186.22 of the Penal Code."

17

We shall direct the court to amend the abstract of judgment in this case to clarify that the gang enhancement allegation was found true only with respect to count 2.

### III.  *VIZCARRA'S SENTENCING ERROR CLAIM*

Last, Vizcarra contends the court erred in both the instant case and the jail stabbing case by calculating his presentence custody credits with the 15 percent limitation under 2933.1, rather than under section 4019, and, thus, he "should have been awarded 280 days of work-time credit in each case."  Specifically, he requests that his sentence be modified "by granting him the proper number of presentence custody credits" in these two cases, which he asserts is "840 total days credit comprised of 560 actual days of presentence custody plus 280 days of conduct credit."

The Attorney General agrees the custody credits in both this case and the jail stabbing case should have been calculated under section 4019, and the judgment *in this case* should be modified as Vizcarra requests.  However, the Attorney General asserts this court should deny Vizcarra's request to modify the custody credit determination in the unrelated jail stabbing case because (among other things) he has not filed a notice of appeal in that case.

We modify Vizcarra's sentence in this case to award him a total of 840 days of presentence custody credit, consisting of 560 actual days of credit plus 280 days of conduct credit.  We decline Vizcarra's request to similarly modify his sentence in the jail stabbing case as he has not filed a notice of appeal in that case.  However, as we are remanding the instant case to the court with directions to amend the abstract of judgment,

18

we shall leave to the discretion of the court the decision whether to similarly modify Vizcarra's sentence in the jail stabbing case on its own motion.

## IV. *ATTORNEY GENERAL'S TWO SENTENCING ERROR CLAIMS*

In the respondent's brief, the Attorney General claims that the court committed two sentencing errors in the instant case and thereby imposed an unauthorized sentence. Specifically, the Attorney General claims that because the court found true the count 2 allegation that Vizcarra had suffered a robbery conviction that was a serious felony strike prior (§ 667, subds. (b)-(i)), Vizcarra's total prison term sentence should be increased by seven years from 15 years to 22 years because the court was required, but failed, to (1) double to four years under the Three Strikes law the two-year sentence it imposed for Vizcarra's count 3 conviction of attempting to dissuade a victim or witness; and (2) impose a consecutive five-year serious felony conviction enhancement under section 667(a)(1).[7] We agree.

---

[7]    Section 667(a)(1) provides:  "In compliance with subdivision (b) of Section 1385, any person *convicted of a serious felony* who previously has been convicted of a serious felony in this state or of any offense committed in another jurisdiction which includes all of the elements of any serious felony, shall receive, in addition to the sentence imposed by the court for the present offense, a *five-year enhancement* for each such prior conviction on charges brought and tried separately.  The terms of the present offense and each enhancement shall run consecutively."  (Italics added.)

19

A. *Vizcarra Concedes the Trial Court Erred by Not Doubling the Count 3 Sentence Under the Three Strikes Law Based on Vizcarra's Prior Serious Felony Strike*

1. *Background*

The court found true the count 2 allegation that Vizcarra previously had suffered a robbery conviction that was a serious felony strike prior (§ 667, subds. (b)-(i); see § 1192.7, subd. (c)(19)). However, a similar strike prior allegation was *not* included in count 3 of the information. As a result of the court's true finding on the count 2 strike prior allegation, the court doubled to eight years under the Three Strikes law the four-year principal prison term it imposed for Vizcarra's count 2 assault-with-a-deadly-weapon conviction in this case. However, because the strike prior allegation set forth in count 2 was not also alleged in count 3, the court did *not* double the two-year subordinate term it imposed for his count 3 conviction of attempting to dissuade a victim or witness.

2. *Analysis*

Citing *People v. Morales* (2003) 106 Cal.App.4th 445 (*Morales*), Vizcarra correctly acknowledges in his reply brief that, even though the prior strike conviction alleged in count 2 was not also alleged in count 3, the court was required, but erroneously failed, to double under the Three Strikes law the two-year sentence it imposed for Vizcarra's count 3 conviction based on the court's finding he had suffered the prior strike conviction. *Morales* is directly on point and persuasively guides our determination of the issue presented here. In *Morales*, a jury convicted the defendant of committing three felony counts of annoying or molesting a child, as charged in the three-count amended information. (*Id*. at p. 447.) The jury also found true count 2 allegations that the

20

defendant had suffered two prior violent felony convictions of child molestation that were strikes under the Three Strikes law (§§ 667, subds. (b)-(i), 1170.12). (*Morales*, at p. 447.) The trial court struck one of the two prior strike findings in the interest of justice (§ 1385, subd. (a)) and, in sentencing the defendant, doubled under the Three Strikes law the prison term it imposed for the count 2 conviction, as required by sections 667, subdivision (e)(1) and 1170.12, subdivision (c)(1). (*Morales*, at p. 447.) However, because the information did not allege the prosecution was seeking enhanced recidivist sentencing under the Three Strikes law as to counts 1 and 3, the trial court did not double the sentences it imposed as to those counts. (*Id*. at pp. 447, 455.) The Court of Appeal reversed the sentence as to counts 1 and 3, and remanded the matter for resentencing, holding that "once the jury found defendant had previously been convicted of a violent felony, the sentence as to *all* counts should have been doubled pursuant to sections 667, subdivision (e)(1) and 1170.12, subdivision (c)(1), subject to the trial court's exercise of its section 1385, subdivision (a) power to strike the prior conviction finding."[8] (*Morales*, at pp. 447-448, italics added.)

---

[8] A trial court may dismiss prior felony conviction allegations in cases prosecuted under the Three Strikes law when dismissal is "in furtherance of justice." (§ 1385, subd. (a); see *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497, 529-530.) In deciding whether to dismiss prior conviction allegations, the court "must consider whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies." (*People v. Williams* (1998) 17 Cal.4th 148, 161.)

Similarly here, once the court found Vizcarra previously had been convicted of robbery—a serious felony strike (see §§ 667, subd. (a)(4) & 1192.7, subd. (c)(19))—as alleged in count 2, the court was required to double his sentence as to all counts, including count 3, "pursuant to sections 667, subdivision (e)(1) and 1170.12, subdivision (c)(1), subject to the trial court's exercise of its section 1385, subdivision (a) power to strike the prior conviction finding." (*Morales*, *supra*, 106 Cal.App.4th at pp. 447-448; §§ 667, subds. (e)(1), (f)(1) & 1170.12, subd. (c)(1).) Thus, we conclude the court erred and rendered an unauthorized sentence by failing to double under the Three Strikes law the two-year sentence it imposed for Vizcarra's count 3 conviction. Accordingly, we reverse the sentence as to count 3 and remand this case for resentencing subject to the court's exercise of its section 1385, subdivision (a) power to strike the prior conviction finding.

B. *The Trial Court Erred by Not Imposing a Mandatory Five-year Enhancement Based on Vizcarra's Prior Serious Felony Conviction*

The Attorney General also argues that as a result of the court's finding that Vizcarra previously had been convicted of robbery as alleged in count 2, the court was required to impose a five-year enhancement under section 667(a)(1). We conclude the court erred and rendered an unauthorized sentence by failing to impose a five-year enhancement under section 667(a)(1).

As pertinent here, section 667(a)(1) provides that "any person convicted of a serious felony who previously has been convicted of a serious felony in this state . . . *shall receive*, in addition to the sentence imposed by the court for the present offense, *a*

22

*five-year enhancement for each such prior conviction* on charges brought and tried separately." (Italics added.) Under this statute, "when the defendant is convicted of a current serious felony . . . and has been previously convicted of a serious felony, the trial court *must* impose a five-year enhancement for each such prior conviction that was brought and tried separately. The terms of the present offense and each section 667(a)[(1)] enhancement must run consecutively." (*People v. Dotson* (1997) 16 Cal.4th 547, 553 (*Dotson*), italics added.) "The trial court has no discretion and the sentence is mandatory." (*People v. Purata* (1996) 42 Cal.App.4th 489, 498 (*Purata*).)

Here, the requirements for imposition of a mandatory five-year enhancement under section 667(a)(1) are satisfied. Vizcarra was convicted in the current case of attempting to dissuade a victim or witness from giving testimony (§ 136.1(a)(2)), which is a serious felony (§§ 667, subd. (a)(4), 1192.7, subd. (c)(37).) The prosecution alleged he previously had been convicted of robbery, which is also a serious felony (§§ 667, subd. (a)(4), 1192.7, subd. (c)(19)), and the court found this allegation to be true. On the foregoing record, we conclude the court was required to impose a consecutive five-year prison term based on Vizcarra's prior serious felony conviction. (§ 667, subd. (a)(1); *Dotson, supra*, 16 Cal.4th at p. 553; *Purata, supra*, 42 Cal.App.4th at p. 498.)

Vizcarra contends, however, that the trial court was not authorized to impose a section 667(a)(1) enhancement because such an enhancement was not specifically charged in the information. Specifically, he contends that, as a matter of federal due process, the court was precluded from imposing a five-year enhancement under section 667(a)(1) because "no serious felony enhancement allegation was alleged or proved," and

23

"[t]here was no allegation in the Information identifiably giving [him] notice that he could be found subject to a five-year enhancement for a prior serious felony conviction." Citing section 1170.1, subdivision (e), Vizcarra also contends he has a statutory right "to have each specific sentencing enhancement pled and proved."[9]

These contentions are unavailing. Although the count 2 prior conviction allegation listed only a statutory section and subdivisions corresponding to the Three Strikes law—specifically, section 667, subdivisions (b) through (i)—rather than section 667(a)(1), "the imposition of the five-year enhancement for the prior serious felony conviction [is] part and parcel of the Three Strikes statutory scheme." (*People v. Dominguez* (1995) 38 Cal.App.4th 410, 425.) In addition, "it is clear that a valid accusatory pleading need not specify by number the statute under which the accused is being charged" (*People v. Thomas* (1987) 43 Cal.3d 818, 826); it is sufficient that the pleading identify the *factual basis* for imposition of an enhanced penalty (*People v. Flynn* (1995) 31 Cal.App.4th 1387, 1392-1395; *People v. Shoaff* (1993) 16 Cal.App.4th 1112, 1117-1118).

Here, the People alleged that Vizcarra "suffered the following prior conviction(s) of a serious or violent felony," and then identified one prior conviction by court case number, Penal Code section violated, date of conviction, county and state of conviction, and court type. Thus, the *factual basis* for a finding that Vizcarra had a prior serious

---

9    Section 1170, subdivision (e) provides: "All enhancements shall be alleged in the accusatory pleading and either admitted by the defendant in open court or found to be true by the trier of fact."

24

felony conviction was adequately charged. (§ 969;[10] *People v. Flynn, supra*, 31 Cal.App.4th at pp. 1392-1395; *People v. Shoaff, supra*, 16 Cal.App.4th at pp. 1117-1118; *People v. Ashcraft* (1956) 138 Cal.App.2d 820, 825.) Although it would be better practice for the People to allege the specific statutes under which they seek to enhance a defendant's sentence, we conclude the information here provided sufficient notice of the potential five-year enhancement by stating the facts supporting it.

A contrary conclusion is not required by *People v. Mancebo* (2002) 27 Cal.4th 735, on which Vizcarra relies. In *Mancebo*, the information charged the defendant with various sex crimes against multiple victims and alleged firearm use and kidnapping to support an enhancement under section 667.61. (*Mancebo,* at p. 740.) At the sentencing hearing, the trial court sua sponte substituted a multiple-victim circumstance for the firearm-use allegation to support the enhancement under section 667.61 and to free up the firearm-use allegation for use to support other enhancements, even though the multiple-victim circumstance had not been alleged by either statute number or descriptive facts. (*Mancebo,* at p. 740.) The Supreme Court affirmed the judgment of the Court of Appeal reversing the sentence, holding that the trial court erred when it used an unpleaded multiple-victim circumstance to support an enhanced sentence under section 667.61. (*Mancebo*, at pp. 739, 742-745, 754.) "*Mancebo* thus stands for the limited proposition that a defendant is entitled to notice of the specific *facts* that will be used to support an

---

[10]    Section 969 provides: "In charging the fact of a previous conviction of felony . . . , it is sufficient to state, 'That the defendant, before the commission of the offense charged herein, was in (giving the title of the court in which the conviction was had) convicted of a felony . . . .'"

enhanced sentence. Facts alleged and proved only as part of the substantive crime charged cannot later be used to support a sentencing enhancement." (*People v. Tardy* (2003) 112 Cal.App.4th 783, 789, italics added.) *Mancebo* is therefore not on point because Vizcarra's sentence, unlike the *Mancebo* defendant's, will be enhanced on the basis of facts that were specifically and separately pleaded and proved for the purpose of enhancement.

We reject Vizcarra's contention that the separation of powers doctrine precludes the addition of a five-year enhancement under section 667(a)(1). Specifically, Vizcarra asserts that the charging function in a criminal prosecution is the sole province of the executive, and, thus, "[a] rule which allows or requires a Court of Appeal to impose an uncharged mandatory sentencing enhancement essentially substitutes the Court of Appeal for the District Attorney in selecting the charges to file in the case." "This," he asserts, "is a violation of the separation of powers because the judiciary does not have the right or responsibility to charge a defendant." This contention fails because the People ─ not this court ─ alleged in the accusatory pleading the specific facts relating to Vizcarra's prior robbery conviction which, because they were found true by the trier of fact (here, the court), require the imposition of a five-year sentence enhancement under section 667(a)(1) as a matter of law.

Vizcarra's additional claim that by "failing to charge" a five-year enhancement under section 667(a)(1), the People have "waived" and are estopped from asserting the right to seek such an enhancement is unavailing. As already discussed, the People properly alleged the factual basis for imposition of a section 667(a)(1) enhancement, and

26

the requirements for imposition of a *mandatory* five-year enhancement under section 667(a)(1) are satisfied.

In sum, based on both the adjudicated fact that Vizcarra had sustained a prior serious felony conviction as specifically alleged in the information, and his current conviction of a serious felony in this case, the trial court was required to impose a consecutive five-year term under section 667(a)(1). (*People v. Turner* (1998) 67 Cal.App.4th 1258, 1269 ["When the truth of the allegation of conviction of a crime qualifying for a five-year enhancement has been established, it is mandatory that the enhancement be imposed."], citing *Dotson*, *supra*, 16 Cal.4th at pp. 550, 554-560 & *Purata*, *supra*, 42 Cal.App.4th at p. 498.) Failure to impose the five-year enhancement under these circumstances results in an unauthorized sentence, which may be addressed and judicially corrected for the first time on appeal. (*Dotson*, at p. 554, fn. 6; *People v. Turner*, *supra*, at p. 1269.) It is our duty to correct an unauthorized sentence on appeal even where, as here, doing so results in a longer prison sentence. (*People v. Serrato* (1973) 9 Cal.3d 753, 764, disapproved on other grounds by *People v. Fosselman* (1983) 33 Cal.3d 572, 583, fn. 1; *People v. Solórzano* (2007) 153 Cal.App.4th 1026, 1040-1041.) Also, because imposition of the prior serious felony conviction enhancement is mandatory, we need not remand for resentencing; instead, we modify the judgment to impose the consecutive five-year enhancement. (*Purata*, *supra*, 42 Cal.App.4th at pp. 498, 499.)

27

DISPOSITION

In this case, the total award of 644 days of presentence custody credit (consisting of 560 actual days of credit plus 84 days of conduct credit) is reversed, and the judgment is modified to award Vizcarra a total of 840 days of presentence custody credit, consisting of 560 actual days of credit plus 280 days of conduct credit. As a result of the trial court's erroneous failure to double under the Three Strikes law the two-year sentence it imposed for Vizcarra's count 3 conviction (§ 136.1(a)(2)), his count 3 sentence is reversed, and the matter is remanded to the trial court for resentencing subject to the court's exercise of its section 1385, subdivision (a) power to strike the prior conviction finding. The judgment is also modified to impose under section 667, subdivision (a)(1), a five-year consecutive term for Vizcarra's serious felony prior conviction. In all other respects, the judgment is affirmed.

The superior court is directed to prepare a corrected abstract of judgment following resentencing (1) to reflect that Vizcarra's count 2 conviction was for assault with a deadly weapon, not attempted murder; (2) to clarify that the gang enhancement allegation (§ 186.22, subd. (b)(1)) was found true only with respect to count 2; (3) to reflect that Vizcarra is awarded a total of 840 days of presentence custody credit, consisting of 560 actual days of credit plus 280 days of conduct credit; (4) to reflect the

28

imposition under section 667, subdivision (a)(1) of a consecutive five-year prison term enhancement for Vizcarra's serious felony prior conviction; and (5) to reflect his count 3 sentence following resentencing. The superior court is also directed to forward a certified copy of the corrected abstract of judgment to the Department of Corrections and Rehabilitation.


NARES, J.

WE CONCUR:

BENKE, Acting P. J.

McDONALD, J.